Thank you. Good morning, Your Honors. May it please the Court, Carolyn Wiggin from the Federal Public Defender's Office, on behalf of Mr. Garza, and I am going to try to reserve two minutes for rebuttal. Okay. I'll try and help you. Thank you. Your Honors, I thought I would start this morning by talking about the double jeopardy issue in the case. I think there's no question that under Ninth Circuit precedent, possession is a lesser included receipt of child pornography if we're talking about the same images on the same media. What do we do with the fact that the, as I recall, that the timing, the images that were found on the storage media were 2003, and the images that were downloaded were after 2005? Doesn't that help? Right. I believe, yeah, the images on the CD were all loaded no later than 2005. The images obtained using peer-to-peer software on the hard drives was between 2007 and 2010. So doesn't that establish that we have two different, those are facts that are different to support the two separate charges of receipt and possession? Well, Your Honor, I'd like to talk about that for a minute because I think it's easy to get into the thinking of sort of a sufficiency of the evidence. We have sufficient evidence of this, these images on a disc, and clearly the jury found the receipt count. So we know the jury found at least one image was obtained from peer-to-peer. But the question in a double jeopardy case is not was there sufficient evidence for the lesser included being a separate offense. The question is, can we be sure that the jury didn't look at the same images when it convicted for both receipt and possession? And in Teague --- Oh, I'm sorry, and I was just going to ask you if you could address what Teague does with this, because it seems like Teague is pretty much directly on point and indicated that regardless of whether there's an error, there wasn't any prejudice because there was ample evidence in that case of a different media. Similarly here, there was ample evidence of use of a CD. So doesn't Teague resolve this issue? Your Honor, Teague, like this case, you're right, the indictments and instructions are very similar. And in Teague, the question was under the plain error standard, is this, was there substantial, I think the substantial injury because of overwhelming and unrebutted evidence of separate conduct. So it's different than sufficiency, which is could a rational jury have possibly convicted. This is overwhelming and unrebutted evidence of the separate conduct. Here, I don't think we have that. The first and most important reason is the prosecution tells the jury, do not look at the CDs. You don't need them. You just need one image. Forget the CDs. So I think that is the most important distinction. Were the CD evidence rebutted, or are you just saying that the prosecutor said it wasn't necessary to look at it? Well, the reason the prosecutor said that is because the evidence of the images on the hard drives being linked to Mr. Garza was far stronger than that of the CDs. He admitted in his study. I thought he admitted in the interview with the agents that he'd been doing this for years and that they would find child pornography on the CDs as well as. In the confession, he admits he's been using peer-to-peer network software to download for several years, which matches up with what they find on his hard drives. He never admits to possession of the CDs. He does admit the bag is his, but there's a brother who lives in the house also, and I would say the defense theme is, you know, these CDs, they have never linked these to my client. The handwriting on the confession and on the CDs is different. He never admits possession. In Teague, you have someone who's got his family pictures, child pornography images morphed with his own images on the very same CDs as the child pornography. In Mr. Garza's case, you don't have that strong evidence linking him. And as I said, I think most significantly is you have the jury told by the prosecution not to look at the CDs. Well, but that's not the evidence. An argument of a lawyer is not evidence, right? And there was circumstantial evidence linking the CDs to the defendant. Is that not right? I don't deny that if we were here under a sufficiency, I would have to concede that. Okay. But I think what we're here under is the standard announced in Teague of overwhelming and unrebutted evidence. I'm having a hard time. I'm looking at, I guess it's ER 58, which is the transcript of his interview with the ICAC agents, and they ask him whether he put child pornography on a disc. And he kind of dances around, but I think fairly read, you can conclude that he acknowledges that he did, although he says, ah, it's just crap that was on my computer. You know, I think I know around the point in the transcript you're talking about. And, you know, I will admit he says things like, whatever, there was a lot of stuff, sometimes I would move it, I don't know. To me, that wasn't a clear, like, yes, I possess those discs that you're going to find. Well, I guess the question for us is could a reasonable jury listen or review the transcript of your client's interview and conclude that he essentially admitted that he moved things that he downloaded onto the CD? And that's, I guess, the argument I'm trying to make, is it's not a good or reasonable jury. What I'm trying to say is it has to be overwhelming and unrebutted. But the jury doesn't really say that, right? The test that Teague lays out says a failure to instruct on separate conduct affects substantial rights when there is a reasonable probability that the jury would not have convicted on both counts had it been properly instructed. So the court did go on to say in this case, in Teague, this test was easily met because there was overwhelming evidence. But that doesn't seem to be the test that the case enunciated. Well, Your Honor, looking at reasonable probability that the jury would not have convicted on both counts? Your Honor, I'd like to grab my copy of Teague. I mean, clearly the Teague court does find there was plainly a double jeopardy violation. It was plain in the record. It was error. And then as I read their test, they're saying, okay, but this type of error does not always affect substantial rights. Well, we can declare plain error but then conclude, in essence, that it doesn't affect his substantial rights. And isn't that the prong that we're wrestling with here? In other words, a question as to whether or not he was prejudiced? Well, yes. It's what I would consider, to me, a new type of prejudice test. And I think the test, the standard they announce is overwhelming and unrebutted evidence. A new kind of prejudice. Isn't it the old Breck v. Abramson? I'm looking at page, the Caldwelli, let's see, 722F3rd at 1192. And we're basically saying that the error affected substantial rights. In most cases, this requirement means that the error must have been prejudicial. It must have affected the outcome of the district court proceedings. That's the Breck v. Abramson standard, is it not? Well, it is a prejudice test. But Brecht, I believe, is the government must prove beyond reasonable doubt that it's not harmless. I might be misquoting it a little. I don't see Brecht quoted in here. What I read from it was this. Let me ask the question a different way. What's new about that test that the Supreme Court hasn't already articulated in Brecht v. Abramson? Well, I mean, I think of Brecht as coming from the world of habeas. This is they analogize it to failure to instruct on an element of the offense. Well, the question is, if there was a constitutional violation, did it affect his substantial rights and deprive him of a fair trial? Right. I agree with that. And based on his admissions, based on conduct that occurred over a four-year period, based on the huge volume of movies and images that the agents recovered pursuant to the search warrant, I'm having a hard time seeing where the prejudice is. How were his substantial rights affected? Clearly, there was substantial evidence for the receipt count, and that's those years you're talking about. The possession count, the question is, can we be sure that the jury would have entered a verdict, had it been instructed that for possession you have to find that he possessed those CDs, et cetera? And I'm saying that because the prosecution said, don't look at those CDs, we can't be sure. And I'll reserve my time. I'll give you a couple minutes. Thank you. Okay. Mr. Adams? Good morning, Your Honors. Brian Enos, United States. I think the Court, at least they sound well-versed on Teague. So I'll just make one brief comment and then move on to any questions the Court may have. This case is actually stronger than the facts in Teague. I hope it was in the published decision in Teague. It was tried in our courthouse. But Danny Teague blamed his step-grandson, even with respect to the morph images, so on and so forth. Mr. Garland didn't blame anybody. In fact, he specifically said his brother and his mother were not involved with respect to whatever was on peer-to-peer and whatever had been downloaded onto CDs. That was him and not them. So this is actually a stronger case than Teague. But I think the Court's got it right. What do we say with opposing counsel stresses the fact that the prosecutor, in our case, instructed the jury not to consider the CDs? How does that affect our analysis? Wasn't that you? Pardon? Wasn't that you? No, it wasn't me. Okay, all right. It wasn't both counsel. And where I'll send them is, just before that, he said the CDs, Mr. Garza possessed the CDs. So it wasn't in isolation where he says, discount the CDs, forget the CDs, we got everything on the computers. What he said was, in his closing, that Mr. Garza did possess the CDs. However, in light of Davenport, possession is a lesser included. So in my view, the more cautious charging decision is to include the computers in both, because if the jury is in their deliberation room and says, gosh, we know he had it, but we don't know that he's the one who received it, at least we still got that option for conviction. What that creates for us is that if he received and possessed the same child pornography, now we may have a double jeopardy problem. What? In which case the remedy is to remand it for a decision by the district court as to whether or not it's going to vacate either the receipt or the possession count. In some cases, perhaps that's true. So why shouldn't we do that here? Because we've got a fact pattern essentially on all fours, if not stronger. I don't know if there's a term of all fives, but where we have ample CD evidence. And to quote Judge Ishii, who sat through the entire trial, all the pretrial proceedings, and this is at ER, page 19, lines 14 through 24, there were two charges, although there's some overlap there based on separate incidents that were testified to and were presented at trial indicating a different factual basis for the two separate charges. So the only way you can get to a point where you have concern is to discount 100 percent of the CD evidence. And Your Honor has already pointed to an excerpt, page 58 of the SDRs, where Mr. Garza hedges, yeah, maybe I did put some things from peer to peer on the CD, so on and so forth. So this really is a fact pattern that is in full alignment with Teague where we don't have a likelihood that there's a different outcome, because otherwise you would have to presume that every unique part, and it's important to note that the superseding indictment indeed does list only external media with respect to the possession count. So with the receipt and distribution, it's actually a distribution conviction here, not receipt. We'll get to that in a minute. That's the computers, possessions, computers, and external media, storage media. And so we've got the CD evidence here with respect to only the possession count. It was all downloaded years before those computers that were ultimately seized and searched first acquired anything. With respect to distribution, Judge Ishii did not plainly err in applying it. Now, as noted in the Scheidt case, it's an unpublished case, but this Court hasn't directly addressed what to do with respect to when to apply distribution in peer-to-peer cases. But here we've got facts, and I would say, you know, which is in alignment with the Collins court, the Eighth Circuit court site in the papers, where when you have someone who's familiar with peer-to-peer, as Mr. Garza admitted to, he downloaded it years before the day of the search, he'd been using it for years on his computer, he understood how it worked. Peer-to-peer is a derivative of Napster, used to be copyright violations, morphed into child pornography violations, right? And so what its purpose is, to share directly child pornography images. That's what its purpose is. And here, Mr. Garza. Or pirated video. Correct. Not just child pornography. Correct, correct. But, you know, the fact pattern I see in the cases that I deal with all the time is someone types in a search term indicative of child pornography, like we have here, boom. They've got it in their shared file folder. They can keep it for further sharing. They can extract it and put it on CDs. They can put it in other parts of their computer where it's not available for sharing. What's important here is the application notes definition of distribution doesn't just say active distribution. It says distribution or possession with intent to distribute. So really the worm turns on this issue with respect to, well, what was Mr. Garza's intent here? Here, he's well-versed in peer-to-peer. He'd been using it for years. He downloaded it. He acknowledges being the person that had found videos, either kept them there for further sharing or moved them. So here we really do have someone with knowledge of how it works. So his intent had to be to share because that's the whole purpose for this software anyway. And what the Collins case said, I happen to provide this side of the court, like me too, is that use of peer-to-peer and some evidence with respect to defendant's computer knowledge is enough to justify the application of the enhancement. Have you got the site? Sure. It's 642 F3rd 654 at 656 and 657, and it's an 8th Circuit 2011 case. Mr. Enos, I want to ask you a question about competency.  Why wouldn't, shouldn't the judge have held a hearing? Because once the judge received the HOPE report, and my papers, go ahead. Well, but the first report found Mr. Garza incompetent. Wouldn't that put a reasonable judge on notice that there's a genuine issue with the competency? As of that point of time, temporarily, yes. So what Judge Ishii did was exactly the right thing. He ordered a competency exam. Now, the Middleton report, the two reports. We don't even know. We're all inferring that he read it, right? Well, I'm glad you asked that because my papers were frankly not clear enough proving that he did read it. So I'm going to provide sites to the record answering that issue. With respect to the very beginning of sentencing, before Judge Ishii starts discussing Mr. Garza. He does talk about a malingering. I do recall that. He does. And that actually helps kind of after the fact because the guy, you know, starts out equivocating about how old he is, and then by the time I'm crossing him, he's anticipating my line of questions based on a transcript that's two years old. That being said, what Judge Ishii said as a prefatory comment was that he had referred to a number of reports with respect to Mr. Garza's mental state. And that's specifically at ER 26 at line 18. This is at the sentencing hearing? Correct. It's at the sentencing hearing. 26 line 18. Correct. And fortuitous comment because there's only two reports in this case. So when he says he's referred to a number of them, he's telling the appellate record, I've reviewed them. And so in addition to that, frankly, in SCR 129, there's a letter that the government provided where BOP directly writes to Judge Ishii in February of 2011 and says, hey, by March 7, 2011, you'll have your report. By May 2011, Judge Ishii issues an order saying the examination's done. Therefore, we're going to let him out of BOP custody. He was in custody for a full three months. To follow up on my sister's question, we have a defense psychiatrist that says he is not competent. We have a much more thorough evaluation by the Bureau of Prisons because they had the opportunity to observe him over a period of several weeks and months, and they conclude he is competent. Why shouldn't the district court have convened a hearing at which it made, in essence, a credibility determination as to which expert to believe? Because that's where he's competent. Because that second report, frankly, resolved the issue. The way I look at it is you've got wrong issues. You're inferring it. You're inferring that it resolved the issue. And nothing came out of Judge Ishii's mouth that's saying, Dr. Hope's report is more thorough. Therefore, I conclude that the defendant's competent. That's correct. But, nevertheless, we now know that he read the report, and we've had two subsequent or two defense counsel that never challenged competency. But the Hope report did. Well, I guess by asking for it, there was a stipulation for an evaluation. I think that's it. You don't construe that to be a challenge to competency? It raised the competency flag. And what Judge Ishii, in my view, very appropriately did say, you know what? We're going to measure twice and cut once on this issue. We're going to send him to BOP. Everyone agree. He was in BOP custody for three months. The Middleton report is simply an interview saying I've talked to the guy. I've got concerns. That's all it was. It wasn't me. That's not fair. I mean, he actually administered some tests, not as many as BOP did, but he gave them the Minnesota Multiphasic Personality Inventory, and he gave them some other cognitive tests and concluded he wasn't competent. My reading was that it wasn't quite as thorough as that. If my recollection is wrong, I apologize for it. Well, I read the report. I mean, did I not? Am I making this up? I don't think so. I'm not going to claim that. Okay, he did, as I recall, he did also indicate there were some red flags in his study of Mr. Garza. But let me ask you this, more important as to whether there was some evidence in the record of mental issues. Is it your reading of Dreyer that whenever there's any evidence of any mental issue, that the judge per se has to have a competency hearing? In other words, there's just a per se rule, and anything and failure to do that is plain error? No. My reading of Dreyer is that the Ninth Circuit, although they use different language, I think they applied the same test. 18 U.S.C. 4241 says if there's reasonable cause to doubt someone's competency and defense counsel doesn't move for hearing, or either party for that matter, and here we have two defense counsel, neither one of them even implied there was an issue after the Hope Report. Or as Dreyer says, if there's a genuine doubt as to competency, then the court needs to be responsible for hearing. So in Dreyer there was a lot of evidence. I mean, there was his inability to speak at the proceeding, and the defense counsel says he can't speak, he'll say something inappropriate. There were three consistent expert reports saying he had brain damage. That's right. So there was a lot of evidence. So here there was some evidence. There was the first Middleton report. So I guess the question for us is, how much evidence is enough to create a reasonable doubt, I guess, for purposes of a plain error review? And where would you draw the line on that? I mean, Dreyer, obviously, there was a lot of evidence of his mental incompetence. The way I look at it, funny ask, I didn't put this in my papers, it's almost akin to the Ninth Circuit's jury instruction on reasonable doubt. And it's not any potential doubt, it's a genuine doubt, right? And so here what you would do is look at the totality, which I think Dreyer says, look at all the facts, and if based on logic and common sense you have a true doubt, then the court needs to address it. Well, why wouldn't, I'm looking at page 5, ER 51, this is Dr. Middleton's psychological evaluation, in which he scores Mr. Garza at 57 on a cognitive status exam and declares that he falls in the severely impaired range. And then he goes on at the bottom of that page to say that he showed significant organic brain damage. And then ultimately he concludes that he's basically not malingering and unable to work with his lawyer in his defense and says he's in need of a conservatorship. I mean, I called Dreyer in bank and wrote a dissent from the denial of re-hearing in bank because I thought that the Dreyer opinion was going to put us in exactly this situation every time there was a suggestion that a defendant was not competent. And as Judge Fukuda points out, in Dreyer there were three psychiatrists who said there was organic brain damage and the lawyer said I don't want my client to speak at sentencing because I'm afraid that whatever he says is going to hurt his case. And we found that was sufficient to put a reasonable district judge on notice that she had to hold competency here. So I guess just to follow up on that, there was also some evidence of physical brain damage. I think they had a brain imaging scan. But is there a principle distinction between Dreyer and this case? And if so, what is it? There is. And I think the Dreyer reports, and it sounds like the court's going to know this better than I, but was based on actual medical data. Here I don't think Mr. Middleton has any foundation to talk about organic injuries and so on and so forth. He interviewed him and that was it. And then he wrote a report. What the Hope report did was it did review medical records. It did undergo over months direct observation. It did apply a variety of diagnostic tests. It did all that stuff. So what you've got is a mountain of data upon which the Hope report is based versus a molehill of data upon which the Middleton report is based. And it's significant. The problem I'm having is I think that you could eviscerate Dr. Middleton on cross examination at a hearing on all the points that you're making in front of us. But as Judge O'Connell points out, what we don't have here is a finding from Judge Ishii that I don't find Dr. Middleton's opinion to be persuasive in the face of Dr. Hope's report and all of the testing and the many months of evaluation that underlies it and supports the diagnosis that he's confident. If we were to require a cartilage finding, then that swallows up the statute, which says there really needs to be reasonable cause to doubt the competency. Well, but that then goes back to Judge Ikuta's point is where's that line? Is it he had a history of seeing psychiatrists. He said diabetes was eating his brain. He, at least on direct examination, appeared not to track the questions of counsel. Now, maybe a little bit different on cross. But does that trigger or is that just that you're saying that's not reasonable cause? Judge Ishii had no reasonable cause after reading the report that there was an issue as to competency. Because neither defense attorney even voiced the issue from the issuance of the Hope report, Judge Ishii was not required to order a competency hearing. He already ordered the exam, a hearing, because based on the facts of the case, there was no reasonable cause. Has there been a change in defense counsel? As I understand it, his first lawyer had a health problem and had to withdraw. I don't know if it was for trial. I know both attorneys. I don't recall there being a health issue. Well, was there a change in counsel? There was. It went from someone named Tao to another person named Green. And Taylor was the one who had arranged for the evaluation by Dr. Middleton and had suggested there might be a problem with Mr. Garza. So did this just kind of fall through the cracks because the new defense lawyer didn't renew the request once the reports were received that we need to have a hearing to resolve this? My recollection of the record is that Mr. Tao was still there even after Mr. Garza was released from custody. So he would have been privy to the reports and still retained as Mr. Garza. Including Dr. Hope's report. Correct. The Hope report was issued in March 2011. So your position is Taylor just didn't renew his objection or raise the request to hearing once he received the Hope report. That's right. So you were mentioning that Taylor didn't. So if Taylor didn't. T-O-T-E-L-L-O. The lawyer. T-O-T-E-L-L-O. Taylor. The lawyer did not, his counsel did not raise this to the judge. And so if we're looking at plain error, and I didn't see a dispute about that, then even if there was error that was plain, we would still have to find that affected his substantial rights. And I guess your Mountain v. Mulhill comparison suggests that his substantial rights were not affected. Is that correct? Do we apply plain error like that? That's correct. It's stated more succinctly than I could. That's exactly right. Because what we have here is the benefit of hindsight in this case. But now we're back into the Dreyer problem, because Dreyer is a plain error case. Well, but here what we have is someone who actually testified, and that Judge Ishii, after observing 100 percent of the trial, applied the obstruction enhancement to. And what he said was he started out acting confused, and by the time he got on cross, hold on one second, let me make sure I've got it here, there it is, he went to very engaged, anticipating issues to be asked in the future. And so we've got the benefit of these facts here. Let me ask you this. Let's assume for the sake of my hypothetical that as good as your argument is, it's not enough to carry the day, and Dreyer says we've got to remand it. Can Judge Ishii conduct a retrospective competency review, and if necessary, take testimony from Drs. Middleton and Hope, and then enter an order saying I credit Dr. Hope. I also include in my opinion what I observed of the defendant testifying at trial, and I conclude that at the time he was fully competent and able to work with his counsel. Reiterating that the government doesn't believe it's necessary on these facts. It's a hypothetical. It's a hypothetical, Mr. Enos. You don't have to accept that. Right. I just want to make sure I'm clear. Okay. I don't see where 18 U.S.C. 4241 would prohibit that, if ultimately found necessary. I don't see anything in the statute that says thou shalt not have any ability to have a competency hearing once he's already testified so and so forth. A retrospective competency hearing. Correct. Okay. Correct. All right. I've let you go way over, and I'm going to give Ms. Wiggins extra time because we didn't talk with her about competency. Thank you. All right. Thank you, Your Honors. I know probably competency is the main issue here, but I just want to quickly address the distribution enhancements under the guidelines and just make clear that you're exceeding the scope of your opening argument, if you do that. You've covered it in your brief. I'd really like to hear from you on the competency issue. Okay. I will move on to that then. Your Honors, obviously, as has been pointed out, we don't have a clear record that Judge Ishii got the HOPE report. And even if we all presume that he did, we don't have a finding by a district judge who has looked at both reports that Mr. Garza was competent. And I think that is a critical component. And we just don't have that here. We can talk all day about what we think, but the district judge is the one who is to make that call. Well, let me ask you this. Where is the line drawn? Where is that line? Where do you suggest we draw that line? Well, I think when defense counsel raises a doubt and there's enough evidence to send someone into custody for this type of examination, then at least you're entitled to a finding. You know, whether you're entitled to a full evidentiary hearing, it probably is the burden of the lawyer to move for that, but you're certainly entitled to a finding at that point regarding when that type of ‑‑ I believe. So are you saying whenever anyone has a mental examination, then the district court has an obligation to respond to make a ruling on his competency or to have a competency hearing? I believe at least a ruling. Now, the defense lawyer might move for evidence. That's not in the statute. So you're drawing this out of dryer, or what's your basis for that? Well, the statute talks about a report being prepared in advance of the hearing. In my mind, that means that at least there's some kind of a hearing or at least a finding on the record that you can be assured the district judge has considered this and actually determined the person is competent to stand trial. So we should require a hearing. Let's say, for example, hypothetically, that the defendant goes into custody, has an examination that comes back competent. Then you're going to require the court to hold a hearing to find the defendant competent. At least put on the record, I've looked at this, I've looked at that, here's why I'm finding that he's competent. Well, but according to what you just said, the statute talks about a hearing, right, in advance of a hearing. To me, that doesn't necessarily mean it's going to be a full‑fledged evidentiary hearing, but I believe it means there's going to be a judicial finding on the record at least. And I just don't see that in this case. And I do see evidence later that although the defense counsel clearly didn't move for a competency exam later in the proceeding, if you read his argument at sentencing, even his closing argument, it's basically I don't think this guy gets what just happened to him at all. So I don't know that we can be sure that defense counsel, although he should have moved for a competency exam and didn't, or a full hearing, I don't think we can be sure that defense counsel was of the view that competency was there. He did ask Mr. Garza at trial a couple of questions as to whether or not Mr. Garza was tracking everything that was going on and whether or not he understood what his defense lawyer was saying to him. And Garza answered both questions in a way that would suggest that he didn't understand and wasn't tracking. I know that defense counsel read part of the indictment and said, do you understand that? And he said no. I remember that. So is that enough to require a plain error review? Or even just on abusive discretion review, is that enough to trigger a requirement to have a competency hearing under Dreyer in your view? I think that the fact that there are the dueling reports that he sent into custody at least requires a finding on the record. By a district judge who acknowledges receiving all of that evidence that this person is competent. Well, I guess where I was going with my questioning is why isn't that invited error? I'm looking at ER 73 and 74. This is the direct exam of Mr. Garza by his lawyer. Have there been times during this case when you haven't really understood everything that's been going on? Answer all of it. Question. Sometimes when we talk, do you understand everything I'm telling you? Witness shakes head. Presumably no. I mean, the whole purpose of that, it looks to me, is to sell error into the record that my client is not competent. So why didn't he move for that determination? I can't answer that question, but I do think, I mean, if you analogize it to Dreyer, the lawyer is saying on the record, look, my client isn't even well enough to allocute at sentencing. And they say that should have triggered something for the district judge to have enough concern to look into this. Our cases say that we rely heavily on defense counsel to tell us when they're having difficulty conferring with their clients and preparing a defense because the client just doesn't understand anything about what's going on. I thought that's where we were going in this case when his first lawyer asked for an evaluation, but then the reports come back and defense counsel doesn't say a word. You know, I can't say what defense counsel's reasoning is, but I think enough later happened on the record. I think that just what had happened already was enough to require a finding by the district judge. What happened later, you could say ideally the defense lawyer should have been the one moving, but you could also say we have plenty of case law about a district judge's sua sponte duty where defense counsel doesn't do that to go ahead and look into it, and I think there was enough here for that. And does the Court have any further questions for me? I think that's all we have. Thank you very much. The case just argued is submitted.
judges: O'connell, Tallman, Ikuta